631 A.2d 848 (1993)
C.D.
v.
N.M.
No. 92-258.
Supreme Court of Vermont.
July 30, 1993.
*849 Nancy Corsones of Corsones & Corsones, Rutland, for plaintiff-appellant.
John J. Bergeron and Norman C. Smith of Bergeron, Paradis, Fitzpatrick & Smith, Burlington, for defendant-appellee.
Present ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
DOOLEY, Justice.
Plaintiff C.D. appeals from a trial court ruling that retroactively modified a child support order previously negotiated with defendant N.M., arguing that the court exceeded its discretionary power in issuing its modification order. We affirm the modification order but remand for reconsideration of the date of retroactivity and for calculation of the amount of child support arrearage, if any, owed to plaintiff.
Defendant and plaintiff were married in 1981, separated in 1985 and divorced in 1987. They have two daughters who are in the custody of plaintiff, their mother. Plaintiff comes from a wealthy family and lives on a substantial amount of inherited money, which is held in several trusts. Each of the two daughters has multiple trust accounts in her own name and receives a substantial annual income from these trusts. Although this income is available to support the daughters, plaintiff does not use it for this purpose. Defendant makes a comfortable living as an executive in his own business.
The original divorce decree required defendant to pay $100 per month for the support of his daughters. During the early *850 stages of the divorce litigation, defendant attempted to discover financial information from plaintiff concerning herself and their daughters, but plaintiff refused such disclosure. The parties subsequently stipulated to a child support amount, and defendant never obtained the financial information. The events were replayed in June 1988, when plaintiff sought an increase in child support. Defendant sought the financial information but was again unsuccessful, and the parties stipulated to a new amount. The new agreement required defendant to pay $450 per month as a base rate, and an additional $5.00 per month for every $1,000 of income in excess of $50,000.
In November 1990, plaintiff moved to hold defendant in contempt because he failed to pay more than the base rate of child support, despite earning over $50,000 a year. On December 14, 1990, defendant moved to modify the child support order, claiming a change of circumstances, and in April 1991, moved to vacate the existing order because of plaintiff's failure to comply with discovery.
In resolving the motions, the family court issued three decisions. The first decision, issued in March 1991, required plaintiff to comply with discovery regarding her financial position and that of the children or suffer an order that she needed no support. The decision also required defendant to pay the arrearage that had accrued prior to the motion to modify, and determined that $40,000 of the income defendant reported for tax purposes in 1989 would not be considered in determining the amount of defendant's child support obligation in 1990-91.
The second decision was issued in October 1991, after plaintiff disclosed her income and that of the children. This decision determined that a change in circumstances sufficient to allow modification of the child support order would exist if defendant showed he was unaware of the extent of the income plaintiff and the children held at the time of the 1988 stipulation. After an evidentiary hearing, the final decision, issued in April 1992, determined that a change of circumstances existed and that plaintiff committed constructive fraud in failing to disclose the requested financial information at the time of the amended order. Based on these determinations, the court modified defendant's child support payment to $100 per month, retroactive to the date of defendant's motion. A later order set this date at April 15, 1991, and ruled that defendant had overpaid child support by $4,800 from that date forward. This amount was established as a "credit against other amounts due and owing to obligee."
Plaintiff makes three basic arguments on appeal: (1) the court abused its discretion by modifying defendant's child support obligation to $100 per month, in light of defendant's substantial income; (2) the court improperly excluded $40,000 from defendant's income in calculating his child support obligation for April 1, 1990 through March 31, 1991; and (3) the court erred in cancelling the 1988 child support order based on constructive fraud.

I.
We first address plaintiff's argument that the trial court exceeded its proper discretionary power in granting the motion to modify child support. Modification of a child support order can be made "upon a showing of a real, substantial and unanticipated change of circumstances." 15 V.S.A. § 660(a); see Bucholt v. Bucholt, 152 Vt. 238, 239, 566 A.2d 409, 410 (1989). The court can modify the order regardless of whether it is based upon a stipulation or agreement. 15 V.S.A. § 660(a). A child support order that varies more than 10% from the amount required under the applicable support guideline meets the modification threshold. 15 V.S.A. § 660(b).
Here, the family court decided to modify the child support order because defendant was unaware of the sizable incomes of plaintiff and the children when he entered into the agreement on which the order was based. The record indicates that plaintiff's income in 1987, the year before the order, was approximately $309,000, of *851 which $58,000 was a capital gain and $122,000 was tax-exempt. In 1990, the last year for which we have evidence, her income was $538,000, of which $208,000 was a capital gain and $156,000 was tax-exempt.
The children's income was $45,000 in 1986, grew to $128,000 in 1987, and reached $159,000 in 1990. The trial court concluded that "[a]t the times of the separation, divorce, and 1988 post-divorce proceedings, the girls, in fact, were not receiving income from trusts as they do now." This conclusion was influenced by the fact that defendant was unaware of the post-1986 income growth and the court's inability to find that even plaintiff knew of the increase because of delay in receiving information from the trust accountant. Defendant's income also grew over this period, from approximately $50,000 in 1987 to $94,000 in 1991. He is the owner of the business from which that income was generated.
Plaintiff, defendant and the children have all had large increases in income since the 1988 order.[*] The court found that these were unanticipated, at least from defendant's perspective. Although plaintiff has challenged this finding, it is supported by the evidence and must stand. See Isham v. Isham, 152 Vt. 637, 640, 568 A.2d 421, 423 (1989). The income increases were sufficient to allow the court to modify the order. Once the evidence supports a finding that the statutory threshold has been met, the trial court has discretion to determine whether it will modify a support order. See id. at 640, 568 A.2d at 423-24.
The court was also correct in considering the information available at the time of the 1988 agreement. The legislative policy, as expressed in § 660(b), is to allow modification of child support obligations to standardized norms, whatever may have been the agreement of the parties in the past. See Grimes v. Grimes, ___ Vt. ___, ___, 621 A.2d 211, 214 (1992). Normally, the child support guidelines will determine whether the income of the parties is such that modification is warranted and establish the amount of the modified obligation. See 15 V.S.A. § 660(d). In this case, however, the income of the parties is so great that the guidelines do not apply. See Office of Child Support Services, Child Support Guidelines § 1002, at 5, in 3 Code of Vermont Rules 13161001, at 7 (Nov. 1990) (maximum income for determining amount available to children is $11,575 per month). In such a case, the court has discretion in determining the proper child support obligation. See 15 V.S.A. § 656(d).
Although the court has discretion, the amount of child support should be based on the policy of meeting the needs of the children and having them share in family income. See 15 V.S.A. § 650 (child support amounts should reflect true costs of raising children and approximate insofar as possible standard of living child would have enjoyed had the marriage not dissolved). The fact that a parent may have agreed, based on inadequate information, to an inappropriate child support amount should not undercut this policy. It is just as proper to modify an inappropriate order for persons with incomes above the guidelines as it is for those with incomes below.
Plaintiff also argues that even if modification is warranted, it was an abuse of discretion to lower the obligation to only $100 per month. In cases where the obligation is not established from the guidelines, the court must consider "all relevant factors," including "the financial resources of the child" and "the financial resources of the custodial parent." 15 V.S.A. 659(a). We have implemented § 659(a) by requiring that the trial court's findings and conclusions show consideration of the statutory factors and the reasons for the amount of support ordered. See Ainsworth v. Ainsworth, 154 Vt. 103, *852 114, 574 A.2d 772, 779 (1990). At least a nominal child support award is required in all cases. See Viskup v. Viskup, 150 Vt. 208, 210, 552 A.2d 400, 402 (1988).
In this case, the family court considered the statutory factors and put primary emphasis on the fact that the children's income not only already exceeded their need, but is almost as great as their father's income. Consistent with the legislative policy, it awarded a nominal amount to be paid by defendant. We hold that the order was within the court's broad discretion. See Isham, 152 Vt. at 640, 568 A.2d at 423.

II.
Plaintiff's next argument is that the court improperly excluded $40,000 from defendant's 1989 income in calculating his child support obligation for April 1, 1990, through March 31, 1991. The income determination was relevant because the 1988 agreement provided that defendant's child support obligation would increase by $5.00 per month for every $1,000 of income in excess of $50,000 in the prior year. The money at issue was received by defendant for the purpose of purchasing property for a new office of the corporation. In order to minimize income taxes, the transaction was structured so that the purchase could be made by individuals, rather than the corporation. The court ruled that the payment would not be used to calculate child support because it "never became available to respondent, was considered personal income by him only in an accounting sense, and was fully invested in what will presumably become an income producing asset."
Plaintiff argues that because the 1988 order keyed the escalation in payments to the "gross income" of defendant, it covered the $40,000 amount. This is a contract construction issue based upon the child support agreement. The general rule regarding contract construction is that we must presume the parties intended to be bound by the plain and express language of their contracts as written. Northern Aircraft, Inc. v. Reed, 154 Vt. 36, 44, 572 A.2d 1382, 1388 (1990). We may look, however, at the circumstances under which the agreement was reached to determine the meaning of the contract. See Osborn v. Osborn, 159 Vt. ___, ___, 614 A.2d 390, 393 (1992). If the construction adopted by the trial court is reasonable, we must sustain it. See Davis v. Davis, 141 Vt. 398, 402, 449 A.2d 947, 949 (1982).
The purpose of child support is to give the children "insofar as possible the standard of living [they] would have enjoyed had the marriage not been dissolved." 15 V.S.A. § 650. Except for tax considerations, the $40,000 would have stayed in the corporation and been used directly to buy the business property. The payment was made to defendant solely to reduce the tax liability of the corporation, not to enrich defendant. It was never available to defendant for his personal living expenses, and if the parties had remained married, never would have contributed to the children's standard of living. Any gain to defendant from the corporation's acquisition of the property would be reflected in future income, which would be considered in establishing child support payments under the agreement. In view of the nature of the payment and the purpose of the escalation clause, it would have been unreasonable to construe the agreement as requiring consideration of the $40,000 payment. We find no error in the court's conclusion.

III.
Plaintiff's final argument is that the court erred in retroactively extinguishing defendant's obligation to make payments under the 1988 order because of a finding of constructive fraud. This argument is based on plaintiff's view that the court rescinded the 1988 order and retroactively imposed the new, reduced order to 1988.
Plaintiff's view is supported by language in the court's ruling, which states that "we find this an appropriate case to rescind the June 1988 agreement based on the doctrine of constructive fraud" and that "the June 1988 agreement is void and unenforceable based on the doctrine of constructive fraud." The relief ordered by the court, *853 however, did not include rescission of the 1988 agreement. The first order of the court, in March 1991, determined that defendant owed any unpaid child support that accrued, pursuant to the 1988 agreement, prior to the motion to modify. Consistent with that determination, the court's final order modified defendant's child support obligation retroactive only to April 15, 1991, and stated that overpayments he had made thereafter would be "a credit against other amounts due and owing by the obligee."
Although the court found grounds to rescind the 1988 order, it failed to follow through and provide relief. Thus, its decision that plaintiff committed constructive fraud, if error at all, is harmless and did not prejudice plaintiff in any way. Plaintiff's challenge to the constructive fraud ruling is not ground for reversal.
The court, however, failed to follow through on its decision that defendant owed an arrearage by calculating that amount, deducting defendant's overpayment, and rendering judgment for the net amount. In response to the March 1991 order, plaintiff submitted a proposed judgment for the arrearage as she calculated it. Defendant responded with a different calculation based on lower income figures. The court did not resolve the dispute between the parties. We must remand for that resolution.
We also note that there appears to be an error in the date assigned by the court to defendant's motion to modify. The court set that date at April 15, 1991, but the record indicates that the motion was filed on December 14, 1990. As previously discussed, the court has the discretion to make its ruling retroactive to "any reasonable date on or after the date of filing of the motion to amend the support order." Towne v. Towne, 150 Vt. 286, 288, 552 A.2d 404, 405 (1988). It does not appear, however, that the court intended to exercise its discretion to fix a later date. On remand the court should reconsider the date to which its modification order was made retroactive.
The order modifying defendant's child support obligation is affirmed. The case is remanded to reconsider the date to which the order was made retroactive and to calculate the net child support arrearage, if any, owed by defendant to plaintiff.
NOTES
[*] The record does not show the source of the capital gains, and we are unable to determine the extent to which they should be considered in establishing a child support order. See Mabee v. Mabee, 159 Vt. ___, ___, 617 A.2d 162, 164 (1992) (capital gains on the sale of property distributed in divorce may be considered as income only with respect to the appreciation in value of the property after the divorce). If we ignore the capital gains, plaintiff's income still grew substantially, from $251,000 in 1987 to $330,000 in 1990.