2015 VT 78












LaMothe
v. LeBlanc (2014-227)

 

2015 VT 78

 

[Filed 12-Jun-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 78
 
 


 


 
 
 No. 2014-227
 
 


 


 
 
 Christine LaMothe
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
 
 
  
 
 
 Family Division
 
 
 
 
  
 
 
  
 
 
 
 
 Christopher LeBlanc
 
 
 December Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Linda
 Levitt, J.
 
 
 
 
  
 
 


Priscilla B. Dubé and Franklin L. Paulino of Bergeron, Paradis
& Fitzpatrick, LLP, Burlington, 

  for Plaintiff-Appellee.

 

Christopher L. LeBlanc, Pro Se, Williston,
Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Robinson and Eaton, JJ.

 

 

¶ 1.            
REIBER, C.J.   In a second appeal to this Court, father
argues that the magistrate and the family division of the superior court erred
on remand by not awarding him a credit for the entire lump-sum derivative
Social Security Disability Insurance (SSDI) benefit given to mother as
representative payee for the parties’ son, by not imputing income to mother,
and by granting mother a deviation from the child-support guidelines
calculations.  We affirm.

¶ 2.            
The facts of this case are set forth in detail in our first decision, LaMothe v. LeBlanc (LaMothe
I), 2013 VT 21, 193 Vt. 399, 70 A.3d 977.  This is a parentage action
in which the family court, in a 2006 order based on the parties’ stipulation,
assigned physical rights and responsibilities to mother and ordered father to
pay mother $175 per month in child support.  Because
the new order contemplated that the minor child would spend well over thirty
percent of nights with father, the parties stipulated
to a new child-support order pursuant to the shared custody guidelines.
 In November 2008, after father was disabled in a motor vehicle accident,
the family court issued a modified child-support order, again based on the
parties’ stipulation, that did not require either
party to pay child support.  In November 2010, mother, as representative
payee, received from the Social Security Administration a $4370 lump-sum
derivative disability benefit for the parties’ son representing a
twenty-three-month period between when father applied for and was granted the
derivative benefit.  The ongoing derivative benefit was initially $190 per
month and has increased modestly since then.

¶ 3.            
In December 2010, father filed a motion asking the family court to
require mother to pay him monthly child support from the monthly derivative
benefit she was receiving and to apply the lump-sum derivative benefit that she
received toward his share of uninsured dental bills for the minor child’s
braces.  He also asked the court to impute income to mother.  Both
the magistrate and the family court on appeal denied father’s motion in all
respects, and he appealed to this Court.  In LaMothe
I, we held that “in the absence of a deviation from the guidelines
calculation, father is entitled to an award of child support in the amount of
the credit to him for the derivative benefit payment to mother less his child
support obligation pursuant to the guidelines.”  2013 VT
21, ¶ 36.  Accordingly, we remanded the matter for the
magistrate to “complete its consideration of mother’s deviation request before
issuing a new child support order.”  Id.
¶ 36 n.11.  As for the lump sum, we directed the magistrate on
remand to “ensure that mother applies the lump sum toward father’s share of the
[$5780] dental bill.”  Id. ¶ 41. 
Finally, we upheld the magistrate’s decision not to impute income to mother,
concluding that the record supported the magistrate’s finding that mother was
not voluntarily underemployed.  Id. ¶ 43.

¶ 4.            
On remand, the magistrate again found mother not to be voluntarily
underemployed and made several guidelines calculations for various periods
between 2010 and 2013.  After crediting father for the monthly derivative
benefit that mother received during those periods, the magistrate arrived at
monthly amounts between $100 and $150 that mother owed father under the
guidelines.  After examining the factors contained in 15 V.S.A.
§ 659(a), the magistrate deviated from the guidelines and ordered that
neither party be required to pay child support to the other from December 2010
on.  The magistrate also ruled, pursuant to this Court’s remand order,
that father was entitled to a credit out of the $4370 lump-sum derivative
benefit for his payment of one-half of the minor child’s dental bills. 
Accordingly, the court ordered mother to pay father $50 per month, beginning in
March 2014, until the $2890 credit was satisfied.

¶ 5.            
Father appealed to the family court, which upheld the magistrate’s
decision in all respects.  On appeal to this Court, father principally
argues that the magistrate erred by not awarding him the entire $4370 lump-sum
derivative benefit, by not finding mother voluntarily underemployed, and by
deviating from the guidelines.  Our review is based on the record before
the magistrate.  See 4 V.S.A. § 465 (allowing appeal from magistrate
decision “on the record” to family division); V.R.F.P. 8(g)(4)
(stating that appeals to family division are “on the record”).  We give
deference to the magistrate’s factual findings, and will affirm “if the
conclusions of law are supported by the findings.”  Tetreault v. Coon,
167 Vt. 396, 399-400, 708 A.2d 571, 574 (1998).  We review de novo
the family court’s conclusions of law.  Coyle v.
Coyle, 2007 VT 21, ¶ 5, 181 Vt. 583, 925 A.2d 996 (mem.). 

¶ 6.            
We first address father’s arguments regarding the lump-sum derivative
benefit.  According to father, the magistrate erred by not crediting him
for the entire $4370 and thus not requiring mother to pay him $4370 rather than
the $2980 representing half of the child’s dental bills.  Father reasons
as follows.  He and mother have nearly equal time with the minor child,
and both have an obligation to support the child in their respective
households.  The zero child-support order in effect during the period in
which the lump sum accrued reinforced the fact that neither parent was entitled
to child support from the other parent.  By ordering mother to pay him
back only $2980 of the $4370 lump sum, father contends, the magistrate effectively
retroactively modified the zero child-support order in effect during the period
covered by the lump-sum award by requiring him to pay mother $1390 in child
support for that period.

¶ 7.            
We disagree.  In LaMothe I,
we held that the lump-sum derivative benefit must be “credited toward father’s
child support obligations, including those relating to health expenses,” 2013
VT 21, ¶ 40, and, accordingly, ordered the magistrate on remand to “ensure
that mother applies the lump sum toward father’s share of the dental bill,” id.
¶ 41.  In so holding, we relied on our
previous decision in Louko v. McDonald,
2011 VT 33, ¶ 1, 189 Vt. 426, 22 A.3d 433, where we held that “a
retroactive Social Security disability lump-sum benefit payment, paid directly
to the children of a worker, may offset a child support arrearage.”  In Louko, we rejected the Office of Child Support’s
argument that applying a lump-sum derivative benefit as a credit against child
support arrearages would be an unlawful retroactive modification of a
preexisting child-support order.  Id. ¶¶ 7, 12, 16; see 15
V.S.A. § 660(e) (“An order may be modified only as to future support
installments and installments which accrued subsequent to the date of notice of
the motion to the other party or parties.”).  We reasoned that
retroactively crediting a lump-sum derivative benefit against child-support
arrearages stemming from a previous order is not the same as retroactively
modifying the order.  Louko, 2011 VT 33, ¶ 15.  

¶ 8.            
Here, on remand, the magistrate applied the lump sum to father’s $2890
share of the minor child’s dental bill, as required by our remand order. 
Apart from sharing medical expenses, there was no child-support obligation in
place during the period covered by the lump-sum payment.  Thus, this case
is fundamentally distinct from Louko, where
the arrearages stemmed from a preexisting child-support obligation. 
Notwithstanding the parties’ shared-custody situation, father is not entitled
to a credit against an obligation that did not exist during the relevant
period.  See Rathbone v. Corse, 2015 VT 73, ¶¶ 16-17, ___ Vt. ___,
___ A.3d ___ (holding that father is “entitled to credit the SSDI derivative
benefit mother received on behalf of the parties’ child against his prior child-support
obligation,” but recognizing “that where an SSDI derivative benefit exceeds the
amount of a child-support obligation, the difference between the two should be
considered as a gratuity for the child”); LaMothe
I, 2013 VT 21, ¶ 22 (acknowledging that “the Vermont courts do not
have the authority to order the SSA to divert a portion of the derivative
benefit” to parent receiving SSDI benefit where derivative benefit exceeds that
parent’s obligation).

¶ 9.            
In this case, the magistrate credited the $4370 lump-sum benefit against
father’s total court-ordered obligation during the period covered by the lump
sum, which was $2890.  In short, father was credited to the full extent of
his existing obligation under the then-applicable order.  If we were to
require mother to reimburse father for the full lump-sum derivative benefit
beyond his support obligation for the period covered by the lump-sum benefit,
we would, in effect, be retroactively modifying the child-support award, in
violation of § 660(e).  Accordingly, father is not entitled to the
amount by which the lump sum exceeded the court-ordered support obligation in
place during the period in question—that is, the $1480 in excess of the $2890
father was obligated to pay for dental bills.

¶ 10.        
Next, we consider father’s argument that the magistrate erred by not
finding mother voluntarily underemployed.  As noted, this Court in LaMothe I, given the record before us, upheld
the magistrate’s discretionary decision not to impute income to mother on the
basis that she was voluntarily underemployed.  2013 VT
21, ¶ 43.  On remand, both the magistrate and the family court
declined once again to impute income to mother on this basis.  Once again,
we uphold that determination, which is primarily factual in nature.  Id. ¶ 42 (“The determination of whether a party is
voluntarily unemployed or underemployed . . . [is] primarily factual, and we
will uphold the magistrate’s findings if they are supported by sufficient
evidence.”).

¶ 11.        
The magistrate made the following findings regarding mother’s
income.  Mother did not graduate from high school and had an annual income
over the previous years between $14,000 and $18,000 made up of a combination of
earnings and unemployment compensation.  Even in years that she worked
full-time, her income did not exceed these amounts.  Since the
magistrate’s earlier determination in March 2011 that mother was not
underemployed, mother (1) worked in 2011 approximately thirty hours per week at
one job supplemented by a second job at a bar; (2) was employed for the entire
year in 2012, but not for a full forty-hour week; and (3) worked in 2013 until
the company she worked for closed its business.  At the time of the
hearing before the magistrate on remand, mother was collecting unemployment
compensation, working part-time at a bar, and searching for work.  Based
on these findings, the magistrate declined to find that mother was voluntarily underemployed.  The family court upheld the
magistrate’s decision not to impute income to mother based on her being
voluntarily underemployed.  We agree that the record supports the
magistrate’s decision.

¶ 12.        
Father’s third principal argument is that the magistrate erred by
granting mother a deviation from the child-support guidelines
calculations.  “Section 659(a) [of Title 15] creates a rebuttable
presumption that the amount reflected in the child-support guidelines is the
amount of support needed by the children.”  Tetreault,
167 Vt. at 405, 708 A.2d at 578.  “To rebut this
presumption and deviate from the guideline amount when calculating an order of
support, the court must determine that application of the guidelines would be
unfair to the child or any of the parties.”  Id.  “To make a
finding that application of the guidelines would be ‘unfair’ the court must
consider all of the relevant factors, including the nine factors specified in
the statute.”  Id.  The factors listed in the statute are: (1)
the financial resources of the parties’ child; (2) the custodial parent’s
financial resources; (3) the standard of living that the child would have
enjoyed if the parties’ relationship had continued; (4) the child’s physical
and emotional condition; (5) the child’s educational needs; (6) the
noncustodial parent’s financial resources and needs; (7) inflation; (8) the
costs of either parent’s educational needs if those costs are incurred to
increase that parent’s earning capacity; (9) travel-related expenses incurred
in exercising parent-child contact; and (10) any other factors that the court
finds to be relevant.  15 V.S.A. § 659(a).

¶ 13.        
As noted, the magistrate determined under the guideline calculations
that mother owed father between $100 and $150 per month after crediting father
for the monthly derivative benefit received by mother.  The magistrate
deviated from those calculations, however, concluding that neither party should
pay the other child support, considering all of the relevant factors.  The
magistrate addressed each of the factors listed in § 659(a), but
ultimately decided to deviate from the guidelines based primarily on the
disparity in the standard of living in the parties’ respective
households.  While mother had minimal income and lived in a
twenty-two-year-old mobile home that had fallen into disrepair, father enjoyed
a far higher standard of living, in part due to his access to his wife’s income
and assets.  The magistrate also noted that father had free use of a
vehicle and a cell phone from his former business, now owned by his wife. 
The reality, according to the magistrate, is that when the parties’ son is with
father at father’s 3500-square-foot home, he enjoys a significantly higher
standard of living than when he is with mother.  The magistrate concluded
that not deviating from the guidelines would be unfair because father had the
ability to provide support for the parties’ child in his home without support
from mother, while mother was “in no position to provide support to [father]
and would jeopardize her own household and [the child’s] home if she were to
have any obligation of support.”  The family court upheld the magistrate’s
deviation ruling and rejected each of father’s objections to that ruling.

¶ 14.        
Father argues on appeal to this Court that the magistrate and family court
erred by: (1) focusing on his standard of living rather than on the standard of
living that the child would have had if the parties had remained married; (2)
factoring in resources from his wife without considering the support provided
by mother’s boyfriend; and (3) relying on his wife’s income and assets. 
We find no error.  The magistrate did not consider the income or assets of
father’s wife in making its guidelines calculations.  But it was proper
for the magistrate to consider all of the resources available to father and,
concomitantly, the standard of living at his home in determining whether a
guideline-based child-support award would be fair.  The magistrate’s
consideration of wife’s income and assets was not relevant to the factor regarding
the standard of living that the parties’ child would have enjoyed had the
parties remained together, id. § 659(a)(3),
but it was relevant to the financial resources available to father, id.
§ 659(a)(2), (6), and the magistrate was entitled to consider any other
factor that it found relevant in determining whether it would be unfair not to
deviate from the guidelines, id. § 659(a)(10). 
The magistrate also specifically addressed the contribution of mother’s
boyfriend to her household, but nonetheless concluded that mother still could
not afford to pay father child support and that it would be unfair to require
her to do so.  We uphold that determination.

¶ 15.        
Finally, father briefly challenges the magistrate’s guidelines
calculations, suggesting that the magistrate erred by crediting mother for care
of another dependent child who was in the custody of the Department for
Children and Families and by including, as part of father’s income, derivative
benefits received by father for his other dependent children.  The first
claim of error is essentially a challenge to the magistrate’s findings
concerning the time mother cared for her other dependent children, which were
supported by the evidence.  Moreover, both claims of error concern the
magistrate’s guidelines calculations, from which the magistrate ultimately
deviated.  Because we are upholding the magistrate’s deviation ruling,
which was based on the conclusion that it would be unfair to require mother to
pay father any child support under the circumstances, any error in the
guidelines calculations is harmless.  See V.R.C.P. 61 (stating that any
error that does not affect substantial rights must be disregarded).

Affirmed.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief Justice